IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JGC Holdings Corporation,<br><br>                         *Petitioner*,<br><br>v.<br><br>Kingdom of Spain,<br><br>                         *Respondent*. | Civil Action No. 1:23-cv-02701 |

## SECOND DECLARATION OF LEO FLYNN

I, Leo Flynn, declare:

1. I am the Principal Legal Adviser of the Legal Service for the AIDE (State aid) team of the European Commission. My background and experience are set forth in my declaration dated 9 February 2024.[1] I make this declaration in response to several arguments raised by JGC and JGC's expert, Conor Quigley K.C., in opposition to Spain's Motion to Dismiss or Stay the Petition.

2. To be clear, as was the case with my first declaration dated 9 February 2024, I am authorised by the European Commission to make this declaration in my official capacity on behalf of the European Commission.

3. I make this declaration based on my own knowledge and belief. Where the facts in this declaration are not within my knowledge, the grounds for my belief are set out in the declaration.

---

[1] All capitalized terms have the same meaning attributed to them in my previous declaration dated 9 February 2024.

4. *Firstly*, I would like to recall that, as laid down in Article 108(3) of the Treaty on the Functioning of the European Union ('TFEU'), Member States, including Spain, have the obligation to not put into effect State aid measures notified to the European Commission pursuant to Article 108 TFEU until the procedure before the European Commission has ended. This Article 108(3) TFEU indeed provides that:

> The Commission shall be informed, in sufficient time to enable it to submit its comments, of any plans to grant or alter aid. If it considers that any such plan is not compatible with the internal market having regard to Article 107, it shall without delay initiate the procedure provided for in paragraph 2. <u>The Member State concerned shall not put its proposed measures into effect until this procedure has resulted in a final decision</u>.

(emphasis added).

5. In the present case, Spain has notified to the European Commission, under Article 108(3) TFEU, the award at issue, which was rendered on November 9, 2021 and notified to the European Commission on March 25, 2022, in the arbitration underlying this case, *JGC Holdings Corp. v. Kingdom of Spain*, ICSID Case No. ARB/15/27 (case number at the European Commission SA. 102404) (the "Award").

6. As the Award was notified to the European Commission pursuant to Article 108(3) TFEU, Spain shall not put into effect the Award until the procedure in case SA.102404 has resulted in a final decision. Any decision ordering Spain to put into effect the Award would create conflicting obligations on Spain.

7. *Secondly*, regarding Mr Quigley's arguments on State aid and damages under European Union law, I would like to recall that, under EU law, there is a distinction between damages that governmental authorities may be ordered to pay for injuries caused to individuals and compensation for State aid. This distinction was recognized by the Court of justice of the European Union ('CJEU') in its decision in *Asteris v. Greece*, 1988 (judgment of the Court of

Justice of September 27, 1988 in Case C-106/87, *Asteris and Others v Greece and EEC*). In that judgment (¶ 25), the CJEU explained that "it is well established that a distinction should be drawn between claims for compensation for damage resulting from unlawfulness … and an action for the payment of amounts due under [EU State aid law], which could not be brought."

8. In this regard, in a 2021 communication, the European Commission issued guidance on the distinction drawn by the CJEU in *Asteris*. Commission Notice on the enforcement of State aid rules by national courts (2021/C 305/01) ("Notice on the Enforcement of State Aid Rules"). The European Commission explained:

> The Court of Justice recalled that State aid is fundamentally different in its legal nature from damages that national authorities may be ordered to pay to individuals in compensation for the damage they have caused (*Asteris* case-law). However, when ruling on the compensation to third parties for the costs incurred as a direct result of an unlawful aid, national courts must be careful not to adopt decisions having the effect of granting [State aid].

Notice on the Enforcement of State Aid Rules, ¶ 96.

9. The European Commission added that "[w]hile individuals may request national courts to order the payment of damages which they consider to be entitled to, such actions cannot have the effect of circumventing the effective application of EU State aid rules." *Id.* at ¶ 97. Specifically, individuals who claim that they are entitled to receive "aid which has not been notified to and approved by the Commission" and have not received such aid "cannot claim as compensation for damages the equivalent of the sum of the non-received aid, since this would constitute an indirect grant of unlawful aid." *Id.*

10. The European Commission further explained that the CJEU's *Asteris* decision "does not concern cases where an applicant requests a national court to award to it previous State aid, which the applicant has not received for whatever reason." *Id.* As held by the CJEU in *Asteris*, and recalled recently by the General Court of the European Union, "compensation for

3

damage suffered cannot be regarded as aid unless it has the effect of compensating for the withdrawal of unlawful or incompatible aid" (see, judgment of the General Court in Joined Cases T-624/15, T-694/15 and T-704/15, *European Food SA, Ioan Micula e.a. v Commission*, paragraph 103*, ECLI:EU:T:2019:423*). In the present case, the *Asteris* case-law cannot prevent the qualification of the Award as State aid in so far as the Award has the effect of compensating for the withdrawal of unlawful aid.

11.  *Thirdly*, regarding Mr Quigley's allegations that the Award would not be imputable to Spain, it is important to recall that the European Commission has already taken the view that an award such as the Award is imputable to Spain. *See* Preliminary Decision and Invitation to Submit Comments of 5 November 2021, State aid SA.54155 (2021/NN) — Arbitration award to Antin, ¶¶ 80-85. First, as Spain voluntarily agreed to enter the ICSID Convention and the Energy Charter Treaty ('ECT'), and incorporated these treaties in its national law, "the payment of the compensation on the basis of the award would be imputable to Spain." *Id*. at ¶ 82. Second, payment of the Award by Spain would require a decision to be taken by Spain. *Id*. at ¶ 83. Third, both the 2007 scheme and the modification of that scheme were adopted by the Spanish authorities and implemented by various legal acts. *Id*. at ¶ 82. Moreover, as the Award would ultimately be paid from the Spanish treasury, any compensation would be made through State resources. *Id*. at ¶ 85.

12.  *Fourthly*, for the sake of completeness, I would like to point out that Mr. Quigley's argument that the Award "does not compensate for unlawful or incompatible aid because the 2007-2012 Grant—for which the Award would compensate—does not constitute State aid" is irrelevant to the debate at hand in so far as the Award relates to the regulatory changes introduced by Spain in RD-L 9/2013, EPA 2013, RD 413/2014, MO IET/1045/2014 and subsequent measures, and that payments before those changes are not affected by it.

13. *Lastly*, as regards the existence of State aid, the Court of Justice of the European Union has already held that the original (2007) support scheme at issue is State aid, which cannot be put into effect (thus, paid) without a prior authorization of the European Commission (see judgment in Case C-275/13, *Elcogás SA v. Administración del Estado*, 22 October, 2014, EU:C:2014:2314). The Commission has confirmed that holding in its decision of November 10, 2017 in case SA.40348, ¶ 84. The Commission has also determined in the aforementioned decision that compensation awarded by an arbitral tribunal in connection with Spain's support scheme "would constitute in and of itself State aid" that Spain cannot pay absent the Commission's authorization. Id. ¶¶ 160, 165.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 3, 2024
Brussels, Belgium

_____
Leo Flynn