APPEAL,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–02701–RC</u>
### *Internal Use Only*

JGC HOLDINGS CORPORATION v. KINGDOM OF SPAIN | Date Filed: 09/15/2023
Assigned to: Judge Rudolph Contreras | Jury Demand: None
Demand: $50,973,000 | Nature of Suit: 890 Other Statutory Actions
Cause: 27:185 Enforcement of Arbitration Award | Jurisdiction: Federal Question

**Petitioner**

| | | |
|---|---|---|
| **JGC HOLDINGS CORPORATION**<br>*TERMINATED: 05/19/2024* | represented by | **Matthew D. McGill**<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC 20036–4504<br>202–955–8500<br>Fax: 202–467–0539<br>Email: <u>mmcgill@gibsondunn.com</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Matthew S. Rozen**<br>GIBSON, DUNN & CRUTCHER<br>1700 M. Street NW<br>Washington, DC 20036–4504<br>202–887–3596<br>Email: <u>MRozen@gibsondunn.com</u><br>*ATTORNEY TO BE NOTICED* |

**Petitioner**

**BLASKET RENEWABLE
INVESTMENTS LLC**


V.

**Respondent**

| | | |
|---|---|---|
| **KINGDOM OF SPAIN** | represented by | **Grace Condro**<br>CURTIS, MALLET–PREVOST, COLT & MOSLE LLP<br>101 Park Avenue, 35th Floor<br>New York, NY 10178<br>212–696–6068<br>Email: <u>gcondro@curtis.com</u><br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Joseph Dominic Pizzurro**
CURTIS, MALLET–PREVOST, COLT
& MOSLE LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 452–7373
Fax: (202) 452–7333
Email: jpizzurro@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Juan Otoniel Perla**
CURTIS, MALLET–PREVOST, COLT
& MOSLE, LLP
101 Park Avenue
New York, NY 10178
212–696–6170
Email: jperla@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Arthur Meehan**
CURTIS, MALLET–PREVOST, COLT
& MOSLE LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 452–7373
Fax: (202) 452–7333
Email: kmeehan@curtis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Brian Garcia**
CURTIS, MALLET–PREVOST, COLT
& MOSLE, LLP
101 Park Avenue
Ste 35th Floor
New York, NY 10178
212–696–6052
Fax: 917–368–8862
Email: robert.garcia@curtis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/15/2023 | 1 | PETITION TO ENFORCE ARBITRATION AWARD against KINGDOM OF SPAIN ( Filing fee $ 402 receipt number ADCDC–10353681.) filed by JGC HOLDINGS CORPORATION. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Text of Proposed Order Proposed Order, # 5 Civil Cover Sheet |

| | | Civil Cover Sheet, # 6 Summons Summons)(McGill, Matthew) (Entered: 09/15/2023) |
|---|---|---|
| 09/15/2023 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by JGC HOLDINGS CORPORATION (McGill, Matthew) (Entered: 09/15/2023) |
| 09/15/2023 | | Case Assigned to Judge Rudolph Contreras. (zcb) (Entered: 09/15/2023) |
| 09/15/2023 | 3 | SUMMONS (1) Issued Electronically as to KINGDOM OF SPAIN. (Attachments: # 1 Notice and Consent)(zcb) (Entered: 09/15/2023) |
| 09/27/2023 | 4 | NOTICE of Appearance by Matthew S. Rozen on behalf of JGC HOLDINGS CORPORATION (Rozen, Matthew) (Entered: 09/27/2023) |
| 12/22/2023 | 5 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to KINGDOM OF SPAIN served on 11/15/2023, answer due 1/14/2024. (Attachments: # 1 Exhibit FedEx Tracking Report, # 2 Exhibit FedEx Proof of Delivery & Signature, # 3 Exhibit Certificate)(McGill, Matthew) (Entered: 12/22/2023) |
| 01/16/2024 | 6 | NOTICE of Appearance by Joseph Dominic Pizzurro on behalf of KINGDOM OF SPAIN (Pizzurro, Joseph) (Entered: 01/16/2024) |
| 01/16/2024 | 7 | Joint MOTION for Briefing Schedule *by JGC Holdings Corporation and* by KINGDOM OF SPAIN. (Attachments: # 1 Text of Proposed Order)(Pizzurro, Joseph) (Entered: 01/16/2024) |
| 01/16/2024 | | MINUTE ORDER granting 7 the parties' Joint Motion to Set a Briefing Schedule: It is hereby ORDERED that the following schedule shall govern further proceedings: Respondent shall file its motion to dismiss on or before February 13, 2024; any amici that seek to file briefs in support of Respondent's motion to dismiss shall file such briefs on or before February 20, 2024; Petitioner shall file its opposition to Respondent's motion to dismiss on or before April 15, 2024; any amici that seek to file briefs in support of Petitioner's opposition to Respondent's motion to dismiss shall file such briefs on or before April 22, 2024; and Respondent shall file its reply in support of its motion to dismiss on or before May 6, 2024. SO ORDERED. Signed by Judge Rudolph Contreras on 1/16/2024. (lcrc1) (Entered: 01/16/2024) |
| 01/18/2024 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert Garcia, Filing fee $ 100, receipt number ADCDC–10628551. Fee Status: Fee Paid. by KINGDOM OF SPAIN. (Attachments: # 1 Declaration –Robert Garcia, # 2 Exhibit –Certificate of Good–Standing, # 3 Text of Proposed Order)(Pizzurro, Joseph) (Entered: 01/18/2024) |
| 01/22/2024 | | MINUTE ORDER granting 8 Motion for Leave to Appear *Pro Hac Vice*: Pursuant to Local Civil Rule 83.2, it is hereby ORDERED that Robert Garcia is admitted to represent Respondent Kingdom of Spain, *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Rudolph Contreras on 1/22/2024. (lcrc1) (Entered: 01/22/2024) |
| 02/13/2024 | 9 | NOTICE of Appearance by Kevin Arthur Meehan on behalf of KINGDOM OF SPAIN (Meehan, Kevin) (Entered: 02/13/2024) |
| 02/13/2024 | 10 | NOTICE of Appearance by Juan Otoniel Perla on behalf of KINGDOM OF SPAIN (Perla, Juan) (Entered: 02/13/2024) |
| 02/13/2024 | 11 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by Robert Brian Garcia on behalf of KINGDOM OF SPAIN (Garcia, Robert) (Entered: 02/13/2024) |
| 02/13/2024 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Grace Condro, Filing fee $ 100, receipt number ADCDC–10687721. Fee Status: Fee Paid. by KINGDOM OF SPAIN. (Attachments: # 1 Declaration –Grace Condro, # 2 Exhibit –Certificate of Good–Standing, # 3 Text of Proposed Order)(Pizzurro, Joseph) (Entered: 02/13/2024) |
| 02/13/2024 | 13 | MOTION to Dismiss *Petition To Enforce Arbitral Award*, MOTION to Stay re 1 Petition to Enforce Arbitration Award, by KINGDOM OF SPAIN. (Attachments: # 1 Memorandum in Support, # 2 Declaration –Juan O. Perla, # 3 Exhibit –1–JGC Award Notification, # 4 Exhibit –2–Komstroy Decision, # 5 –3–Van Gend Decision, # 6 Declaration –Leo Flynn, # 7 Exhibit 1–EU Decision on Art 108 TFEU, # 8 Exhibit –2–EU Council Regulation, # 9 Exhibit –3–State Aid Decision, # 10 Exhibit –4–Antin Invitation for Comment, # 11 Exhibit –5–Commission v. Greece Decision, # 12 Exhibit –6–Commission Notice on Recovery of Unlawful State Aid, # 13 Text of Proposed Order, # 14 Certificate of Service)(Pizzurro, Joseph) (Entered: 02/13/2024) |
| 02/14/2024 | | MINUTE ORDER granting 12 Motion for Leave to Appear *Pro Hac Vice*: Pursuant to Local Civil Rule 83.2, it is hereby ORDERED that Grace Condro is admitted to represent Respondent Kingdom of Spain, *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Rudolph Contreras on 2/14/2024. (lcrc1) (Entered: 02/14/2024) |
| 02/21/2024 | 14 | NOTICE of Appearance by Grace Condro on behalf of KINGDOM OF SPAIN (Condro, Grace) (Entered: 02/21/2024) |
| 04/15/2024 | 15 | Memorandum in opposition to re 13 Motion to Dismiss,,, Motion to Stay,, filed by JGC HOLDINGS CORPORATION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(McGill, Matthew) (Entered: 04/15/2024) |
| 04/15/2024 | 16 | DECLARATION *of Conor Quigley* by JGC HOLDINGS CORPORATION re 15 Memorandum in Opposition. (Attachments: # 1 Exhibit)(McGill, Matthew) (Entered: 04/15/2024) |
| 05/06/2024 | 17 | REPLY to opposition to motion re 13 MOTION to Dismiss *Petition To Enforce Arbitral Award* MOTION to Stay re 1 Petition to Enforce Arbitration Award, filed by KINGDOM OF SPAIN. (Attachments: # 1 Declaration –Second Declaration of Leo Flynn, # 2 Declaration –Second Declaration of Juan O. Perla, # 3 Exhibit –1–Asteris vs. Greece, # 4 Exhibit –2–Notice on the Enforcement of State Aid Rules, # 5 Exhibit –3–General Court Decision in Micula, # 6 Exhibit –4–Elcogas Decision, # 7 Exhibit –5–Commission vs. United Kingdom, # 8 Exhibit –6–Decision in Deutsche Lufthansa, # 9 Exhibit –7–Opinion of Advocate General Mengozzi, # 10 Exhibit –8–January 2022 Decision in Commission vs. European Food and Others, # 11 Exhibit –9–NextEra and 9Ren Argument Transcript, # 12 Certificate of Service)(Pizzurro, Joseph) (Entered: 05/06/2024) |
| 05/14/2024 | 18 | Unopposed MOTION to Substitute Party by JGC HOLDINGS CORPORATION. (Attachments: # 1 Text of Proposed Order (stipulated))(McGill, Matthew) (Entered: 05/14/2024) |
| 05/19/2024 | 19 | ORDER granting 18 Petitioner's Unopposed Motion for Substitution. See document for details. Signed by Judge Rudolph Contreras on 5/19/2024. (lcrc1) (Entered: 05/19/2024) |

| 08/29/2024 | 20 | NOTICE OF SUPPLEMENTAL AUTHORITY by BLASKET RENEWABLE INVESTMENTS LLC (Attachments: # 1 Exhibit)(McGill, Matthew) (Entered: 08/29/2024) |
|---|---|---|
| 09/03/2024 | 21 | RESPONSE re 20 NOTICE OF SUPPLEMENTAL AUTHORITY filed by KINGDOM OF SPAIN. (Attachments: # 1 Certificate of Service)(Pizzurro, Joseph) (Entered: 09/03/2024) |
| 09/19/2024 | 22 | NOTICE of Change of Address by Matthew D. McGill (McGill, Matthew) (Entered: 09/19/2024) |
| 09/26/2024 | 23 | ORDER granting 1 Petition to Enforce Arbitral Award; denying 13 Motion to Dismiss. See document for details. Signed by Judge Rudolph Contreras on 9/26/2024. (lcrc3) (Main Document 23 replaced on 9/26/2024) (ztnr). (Entered: 09/26/2024) |
| 09/26/2024 | 24 | MEMORANDUM OPINION granting 1 Petition to Enforce Arbitral Award; denying 13 Motion to Dismiss. See document for details. Signed by Judge Rudolph Contreras on 9/26/2024. (lcrc3) (Entered: 09/26/2024) |
| 10/25/2024 | 25 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 23 Order on Motion to Dismiss, Order on Motion to Stay, 24 Memorandum & Opinion by KINGDOM OF SPAIN. Filing fee $ 605, receipt number ADCDC–11258999. Fee Status: Fee Paid. Parties have been notified. (Pizzurro, Joseph) (Entered: 10/25/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Blasket Renewable Investments, LLC,

　　　　　　　　*Petitioner*,

v.

Kingdom of Spain,

　　　　　　　　*Respondent*.

Civil Action No. 1:23-cv-02701

## NOTICE OF APPEAL

Notice is hereby given that Respondent Kingdom of Spain appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order [Dkt. No. 23] and supporting Memorandum Opinion [Dkt. No. 24], entered in this action on September 26, 2024, denying Respondent's Motion to Dismiss Petition to Enforce Arbitral Award, granting Petitioner's Petition to Enforce Arbitral Award, and granting summary judgment to Petitioner.

Dated: Washington, D.C.
　　　　October 25, 2024

　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　CURTIS, MALLET-PREVOST,
　　　　　　　　　　　　COLT & MOSLE LLP

　　　　　　　　　　　By: _Joseph D. Pizzurro_
　　　　　　　　　　　　　　Joseph D. Pizzurro (D.C. Bar No. 468922)
　　　　　　　　　　　　　　Kevin A. Meehan (D.C. Bar No. 1613059)
　　　　　　　　　　　　　　Juan O. Perla (D.C. Bar No. 1660389)
　　　　　　　　　　　　　　1717 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　Tel.: (202) 452-7373
　　　　　　　　　　　　　　Fax: (202) 452-7333
　　　　　　　　　　　　　　Email: jpizzurro@curtis.com
　　　　　　　　　　　　　　　　　kmeehan@curtis.com
　　　　　　　　　　　　　　　　　jperla@curtis.com

　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　Robert Garcia (*pro hac vice*)
　　　　　　　　　　　　　　Grace Condro (*pro hac vice*)
　　　　　　　　　　　　　　101 Park Avenue
　　　　　　　　　　　　　　New York, NY 10178

Tel.: (212) 696-6000
Fax: (212) 697-1559
Email: robert.garcia@curtis.com
        gcondro@curtis.com

*Attorneys for Respondent*
*Kingdom of Spain*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Petitioner.


*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BLASKET RENEWABLE | : | | |
| INVESTMENTS, LLC, | : | | |
| | : | | |
| Petitioner, | : | Civil Action No.: | 23-2701 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 1, 13 |
| | : | | |
| KINGDOM OF SPAIN, | : | | |
| | : | | |
| Respondent. | : | | |

<u>**ORDER**</u>

**GRANTING PETITIONER'S PETITION TO ENFORCE ARBITRAL AWARD; DENYING**

**RESPONDENT'S MOTION TO DISMISS PETITION TO ENFORCE ARBITRAL AWARD**

For the reasons stated in the Court's Memorandum Opinion separately and

contemporaneously issued, it is hereby **ORDERED** that Spain's motion to dismiss is **DENIED**;

and it is

**FURTHER ORDERED** that summary judgment is granted to Petitioner, and the petition

to enforce the Award is **GRANTED**; and it is

**FURTHER ORDERED** that the parties shall meet, confer, and jointly file a proposed

final judgment on or before October 28, 2024. That proposed judgment shall include all

elements included in the ICSID Award, including a current calculation of pre- and post-judgment

interest.

**SO ORDERED**.

Dated: September 26, 2024                               RUDOLPH CONTRERAS
                                                                          United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BLASKET RENEWABLE | : | | |
| INVESTMENTS, LLC, | : | | |
| | : | | |
| Petitioner, | : | Civil Action No.: | 23-2701 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 1, 13 |
| | : | | |
| KINGDOM OF SPAIN, | : | | |
| | : | | |
| Respondent. | : | | |

**MEMORANDUM OPINION**

**GRANTING PETITIONER'S PETITION TO ENFORCE ARBITRAL AWARD; DENYING**

**RESPONDENT'S MOTION TO DISMISS PETITION TO ENFORCE ARBITRAL AWARD**

**I.  INTRODUCTION**

An Arbitral Tribunal convened under the International Convention on the Settlement of
Investment Disputes between States and Nationals of Other States ("ICSID Convention") ruled
for JGC Holdings Corporation ("JGC") in a dispute with the Kingdom of Spain over electricity
infrastructure investments governed by the Energy Charter Treaty ("ECT").  JGC petitioned this
Court to enforce the award under 22 U.S.C. § 1650a.  Spain moves to dismiss that petition on the
grounds that the Tribunal lacked jurisdiction to enter a pecuniary award, as well as under
international comity and *forum non conveniens*.  After the parties fully briefed that motion, JGC
assigned its award to Blasket Renewable Investments, LLC ("Blasket"), which substituted into
the action as Petitioner.  The Court finds that the Foreign Sovereign Immunities Act ("FSIA")
provides subject matter jurisdiction over the case, concludes that Spain's arguments do not
overcome the Court's obligation to enforce the award, and grants the petition.

## II.  FACTUAL BACKGROUND

### A.  The Energy Charter Treaty

The ECT is a multilateral treaty established "to promote long-term cooperation in the energy field."  Energy Charter Treaty art. 2., Dec. 7, 1994, 2080 U.N.T.S. 95, ECF No. 1-3. Parties to the treaty must "work to promote access to international markets on commercial terms, and generally to develop an open and competitive market, for Energy Materials and Products." *Id.* art. 3.  Part III of the ECT concerns "Investment Promotion and Protection" and provides that "[e]ach Contracting Party shall . . . encourage and create stable, equitable, favorable and transparent conditions for Investors of other Contracting Parties" and provide those investments "fair and equitable treatment."  *Id.* art. 10(1).  The treaty further requires that "Investments shall . . . enjoy the most constant protection and security and no Contracting Party shall in any way impair by unreasonable or discriminatory measures their management, maintenance, use, enjoyment or disposal."  *Id.*

The ECT also provides several mechanisms for the resolution of disputes between investors and the Contracting Parties in which they invest, and arbitration represents one of those options.  *See id.* art. 26(2)(c).  The ECT states that "each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of" Article 26.  *Id.* art. 26(3)(a).  One forum for this dispute resolution is the International Centre for Settlement of Investment Disputes ("ICSID").  *Id.* art. 26(4).  The ECT further mandates that "awards of arbitration . . . shall be final and binding upon the parties to the dispute."  *Id.* art. 26(8).

Spain ratified the ECT on December 16, 1997, *see* 2080 U.N.T.S. at 96, and the agreement entered into force for Spain on April 16, 1998, *see* ICSID Decision on Jurisdiction,

Liability, and Certain Issues of Quantum ("Decision") ¶ 122.  ECF No. 1-1.[1]  Japan also ratified

the treaty, which entered into force for that country on October 21, 2002.  *See* Decision ¶ 122.

## B.  The ICSID Convention

The ICSID Convention arose from multilateral efforts to facilitate private foreign

investment in developing economies, serving to mitigate "risks of expropriation and other

'government measures that might tend to impair the rights or assets of foreign investors.'"  *Mobil*

*Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) (quoting

Anthony R. Parra, *The History of ICSID* 12 (Oxford 2012)).  The Convention "provide[s]

facilities for conciliation and arbitration of investment disputes between Contracting States and

nationals of other Contracting States."  ICSID Convention art. 1(2), Mar. 18, 1965, 17 U.S.T.

1270, 575 U.N.T.S. 160.

Under the Convention, ICSID's "jurisdiction . . . shall extend to any legal dispute arising

directly out of an investment, between a Contracting State . . . and a national of another

Contracting State, which the parties to the dispute consent in writing to submit."  *Id.* art. 25(1).

"When the parties have given their consent, no party may withdraw its consent unilaterally."  *Id.*

An Arbitral Tribunal convened under the Convention "shall be the judge of its own

competence," and parties must raise jurisdictional challenges for the Tribunal to address as a

"preliminary question."  *Id.* art. 41.  Once the Tribunal issues an award "deal[ing] with every

question submitted to the Tribunal," *id.* art. 48, a party may request annulment on various

grounds, including that the Tribunal "manifestly exceeded its powers," *id.* art. 52.  Absent

---

[1] Spain recently announced its intention to withdraw from the ECT, but because this withdrawal post-dates the events in question here, the Court treats it as a signatory to the ECT. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024).

annulment, however, "[t]he award shall be binding on the parties and shall not be subject to any appeal or to any other remedy" outside of the Convention. *Id.* art. 53(1). ICSID does not enforce arbitral awards issued pursuant to its procedures, however, and parties must rely on member states' courts for enforcement. *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 513 (D.C. Cir. 2023). The Convention thus requires Contracting States to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award." ICSID Convention art. 54.

Japan, Spain, and the United States are all parties to the ICSID Convention. *See* ICSID, List of Contracting States and Other Signatories of the Convention, Jul. 24, 2024, at https://perma.cc/LBJ6-98UZ. The treaty entered into force for Spain on September 17, 1994, and it entered into force for Japan on September 16, 1967. *See id.* The United States has been party to the treaty since 1966. *See id.* Congress passed legislation implementing U.S. obligations under ICSID, *see* Pub. L. No. 89-532, 80 Stat. 344 (1966), with enforcement of ICSID awards codified at 22 U.S.C. § 1650a.

### C. JGC's Investments and Arbitration

During the late 1990s, Spain began offering financial incentives to attract investors to its renewable energy space. Decision ¶ 119. This program included a premium to supplement the market price of electricity produced by renewable energy sources. *See id.* ¶¶ 125, 127. Spain made various adjustments to the incentives in the ensuing years, *see id.* ¶¶ 132–158, including by introducing regulated electricity tariffs, *see id.* ¶¶ 140, 166. In 2007, Spain increased the premium and regulated tariff afforded to electricity produced by solar thermal plants, indicating that the rates would remain in place for at least 25 years. *Id.* ¶¶ 161, 166, 171. In 2010, JGC—a

large Japanese engineering company—invested in two Spanish companies operating solar

thermal plants near Córdoba, Spain, *id.* ¶¶ 120, 279, basing its decision in part on the Spanish

government's favorable remuneration regime, *see id.* ¶¶ 292–96.  Beginning in 2012, however,

Spain began walking back these incentives and imposed a seven percent tax on the production of

electric power.  *See id.* ¶¶ 212–73; *see also NextEra Energy Glob. Holdings B.V. v. Kingdom of

Spain*, 112 F.4th 1088, 1095 (D.C. Cir. 2024).

Numerous investors, including JGC, naturally disagreed with Spain's decision to

decrease the financial incentives attending their investments, resorting to arbitration through the

ECT and ICSID.[2]  JGC filed its request for arbitration on June 8, 2015.  Decision ¶ 6.  JGC

contended that Spain had breached its obligations under Part III of the ECT and sought

compensation.  *Id.* ¶ 376.  Spain responded that it had complied with its obligations under the

ECT and that the incentives represented "state aid" forbidden under European Union ("EU") law,

such that no investor could have a legitimate expectation to receive them.  *Id.* ¶¶ 380–83, 663.

The Tribunal issued its Decision on May 21, 2021, *id.* at 1, concluding that Spain

"fundamentally altered the essential features of the remuneration regime [JGC] relied on and

thus frustrated [JGC's] legitimate expectations in breach of [Spain's] international obligations

---

[2] At least a dozen similar actions to enforce arbitration awards against Spain remain pending in this district, many of which were stayed pending the outcome of appeals ultimately resolved in the *NextEra* opinion.  *See NextEra Energy Global Holdings B.V. et al. v. Kingdom of Spain*, No. 19-cv-1618; *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 21-cv-3249; *InfraStructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 18-cv-1753; *Novenergia II-Energy & Environment (SCA) v. Kingdom of Spain*, No. 18-cv-1148; *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, No. 19-cv-3783; *Watkins Holdings S. R.L. v. Kingdom of Spain*, No. 20-cv-1081; *Infrared Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. 20-cv-817; *Cube Infrastructure Fund Sicav v. Kingdom of Spain*, No. 20-cv-1708; *BayWa R.E. AG v. Kingdom of Spain*, No. 22-cv-2403; *RWE Renewables GMBH v. Kingdom of Spain*, No. 21-cv-3232*; Swiss Renewable Power Partners S.A.R.L. v. Kingdom of Spain*, No. 23-cv-512; *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-01871; *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, No. 18-cv-2254.

under Article 10(1) of the ECT." *Id.* ¶ 871.  The Tribunal awarded JGC €23.51 million as compensation, as well as pre-award interest on that amount, arbitration costs, and legal fees. Award ¶ 73, ECF No. 1-1.

On March 9, 2022, Spain applied for an annulment of the award, and ICSID convened an *ad hoc* Committee.  Annulment Decision ¶¶ 4–6, ECF No. 15-1.  Spain argued, among other things, that the Tribunal had manifestly exceeded its powers "by failing to apply EU law to the merits of the dispute."  *Id.* ¶ 49(a).  If it had applied EU law regarding state aid, Spain argued, the Tribunal would have determined that JGC had no legitimate expectations in the longevity of Spain's aid scheme.  *Id.* ¶ 81.  On February 6, 2024, the Committee concluded that the Tribunal applied the appropriate law, *id.* ¶ 134, and rejected Spain's remaining arguments for annulment, *id.* ¶¶ 68–212.

JGC filed a petition to enforce the ICSID award in this Court on September 15, 2023. ECF No. 1.  Spain moved to dismiss the petition on February 13, 2024, after the *ad hoc* Committee dismissed its application for annulment.  ECF No. 13.  Spain's motion alternatively requests a stay.  *Id.*  JGC opposed the motion to dismiss.  ECF No. 15.  After the motion was fully briefed, JGC assigned the arbitration award to Blasket, and the parties stipulated to substitute Blasket into the action as Petitioner.  ECF No. 18.

### III.  LEGAL STANDARD

#### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim or complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018).  In considering such a motion, the complaint must be construed "liberally in the

plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."
*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI*
*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But a court may disregard "inferences
drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."
*Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal*, 16 F.3d at 1276)
(brackets omitted).  The Court may consider "any documents either attached to or incorporated
in the complaint and matters of which [the Court] may take judicial notice."  *Equal Emp.*
*Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a).  A dispute is genuine if "the evidence presents a sufficient disagreement to
require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).
And a fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* at
248.  On summary judgment, the Court views all evidence "in the light most favorable to the
nonmoving party and the [C]ourt [ ] draw[s] all reasonable inferences in favor of the nonmoving
party."  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

### IV.  ANALYSIS

Spain raises numerous arguments opposing Petitioner's enforcement of the award in this
Court.  Spain first argues that the award is not entitled to full faith and credit.  *See* Resp't's Mot.
Dismiss Pet. ("Resp't's Mot.") at 13–17, ECF No. 13-1.  It then appeals to various doctrines
entertained by courts in foreign relations contexts, including the act of state doctrine, the foreign
sovereign compulsion doctrine, and *forum non conveniens*.  *See id.* at 18–22.  In the alternative,

Spain requests that the Court stay the action pending resolution of related proceedings in the D.C. Circuit and European Commission. *See id.* at 22–26. The Court addresses the request for a stay first, as a stay would obviate the need to decide the remainder of the motion at this time. Although the parties do not dispute this Court's jurisdiction under the FSIA, the Court nonetheless assures itself of its subject matter jurisdiction here. The Court then examines Spain's defenses to enforcement.

The Court additionally notes that 22 U.S.C. § 1650a does not explicitly state the form of the action necessary to enforce an arbitration award. One judge in this district has concluded, with convincing reasoning, that "ICSID awards were intended to be enforced by plenary actions" governed by the Federal Rules of Civil Procedure. *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 50 (D.D.C. 2015) (holding that an ICSID arbitration award could not be domesticated through a summary, ex parte process). The Second Circuit has held similarly. *See Mobil*, 863 F.3d at 124 (concluding that enforcement requires "an action on the award in federal court"). The Court agrees that in federal court "[t]here is one form of action—the civil action," Fed. R. Civ. P. 2, which must adhere to the federal rules, *see* Fed R. Civ. P. 1. The parties here ask the Court to consider materials outside the pleadings, and as such the Court must treat Spain's motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-cv-1708, 2023 WL 2914472, at *13 (D.D.C. Mar. 31, 2023) (applying a summary judgment standard). The Court concludes that the parties have been "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court may thus convert the motion "without providing notice or the opportunity for discovery to the parties." *Citizens For Resp. & Ethics in Washington v. Bd. of Governors of The Fed. Rsrv. Sys.*, 669 F. Supp. 2d 126, 128 (D.D.C. 2009)

(quoting *Highland Renovation Corp. v. Hanover Ins. Group*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009)).  This is particularly true in the present case where the parties proceeded through several years of arbitration, and the relevant materials are readily available.

### A.  Spain's Request for a Stay

The Court first considers Spain's request for a stay, given that issuing a stay would obviate the need to address the remaining portions of the motion at this time.  Spain cites two ongoing proceedings that it claims are "likely dispositive" of "the Court's analysis in this case": (1) a European Commission investigation into whether Spain's regulatory regime constituted state aid prohibited under EU law, and (2) related cases before the D.C. Circuit.  Resp't's Mot. at 22–24.  Spain argues that concerns of judicial economy and hardship on the parties merit a stay in this matter.  *Id.* at 24–25.  Petitioner responds that the outcome of the European Commission's investigation and the appeals before the D.C. Circuit are not relevant to the legal issues in this case.  Pet.'s Opp'n Mot. Dismiss ("Pet.'s Opp'n") at 23–25, ECF No. 15.  It further asserts that a stay would contravene the ICSID Convention and the mandatory language in 22 U.S.C. § 1650a that an award "shall be enforced."  *Id.* at 25–26.  Finally, Petitioner contends that a stay would cause harm because it would delay recovery of the award and place Petitioner in a worse position regarding other creditors' liens.  *Id.* at 27.  The Court agrees with Petitioner that the pending proceedings before the European Commission would not resolve legal issues relevant to this case, and it observes that the D.C. Circuit has issued an opinion in the relevant appeals.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  When determining whether to stay proceedings, a court must "'weigh competing interests and maintain an even

balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55). The party seeking the stay bears the burden and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Philipp v. Fed. Republic of Ger.*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Landis*, 299 U.S. at 255). Because the Court concludes that a stay is unwarranted here, it need not address whether the language of 22 U.S.C. § 1650a precludes a stay. *See* Pet'r's Opp'n at 25–26.

Spain is correct that a stay may be warranted when "the outcome of the judicial proceedings" elsewhere "may affect this Court's determinations." *Hulley Enterprises Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 284 (D.D.C. 2016). Yet the D.C. Circuit has since issued an opinion in the appeals to which Petitioner points the Court. *See NextEra*, 112 F.4th at 1088. That litigation primarily concerned subject matter jurisdiction under the FSIA and the district courts' issuance of injunctions, and as such provides limited guidance here in the Court's consideration of whether the Award must receive full faith and credit. *See generally id.*

In addition, as explained further below, the Court need not grapple with the issue of whether Spain's incentive regime constituted unlawful state aid, or whether the arbitration award itself represents state aid. Spain argued to the Arbitral Tribunal and the *ad hoc* Committee that JGC could not have expected to receive the benefits of unlawful state aid. Decision ¶¶ 380–83, 663; Annulment Decision ¶ 81. In its consideration of whether it must enforce the award, the Court does not engage with this merits argument from the underlying arbitration. Whether the Award itself represents state aid does not bear on whether the Award is genuine and entitled to

full faith and credit, as the Court will explain.  The Court thus declines to stay this matter

pending the outcome of further proceedings before the European Commission.

### B.  Jurisdiction Under the FSIA

Spain does not contest that the Court has subject matter jurisdiction over this case, nor

does it assert sovereign immunity.  *See generally* Resp't's Mot.  Courts, however, "have an

independent obligation to determine whether subject-matter jurisdiction exists, even in the

absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006)

(citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  "[T]he FSIA provides the

sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine

Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Under the FSIA, "a

foreign state is presumptively immune from the jurisdiction of United States courts," and a

federal court has subject matter jurisdiction only if "a specified exception applies."  *Saudi Arabia

v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S.

480, 488–89 (1983)).

The FSIA's arbitration exception states that a foreign state shall not be immune from the

jurisdiction of U.S. courts in an action "to confirm an award made pursuant to . . . an agreement

to arbitrate" if "the agreement or award is or may be governed by a treaty or other international

agreement in force for the United States calling for the recognition and enforcement of arbitral

awards."  28 U.S.C. § 1605(a)(6).  The D.C. Circuit has held that the arbitration exception

requires a district court to find three "jurisdictional facts": "(1) an arbitration agreement, (2) an

arbitration award, and (3) a treaty potentially governing award enforcement."  *NextEra,* 112

F.4th at 1100 (citing *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir.

2021), and *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015)).

The Court finds these three jurisdictional facts here. First, the ECT constitutes an agreement to arbitrate. *See id.* at 1100–03 (holding that Spain's ratification of the ECT constituted an agreement to arbitrate with a private party). Second, ICSID has issued an arbitration award. *See* Award. Third, the ICSID Convention and the ECT both govern the award. *See* ICSID Convention art. 54 (requiring Contracting Parties to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award."); ECT art. 26(8) (mandating that "awards of arbitration . . . shall be final and binding upon the parties to the dispute."). Having established these jurisdictional facts, the Court is satisfied that the FSIA's arbitration exception provides subject matter jurisdiction over this case. *See NextEra*, 112 F.4th at 1100.

### C. Full Faith and Credit

The Court next considers whether the Award should receive full faith and credit. Petitioner contends that the arbitration award is not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. Pet. ¶ 21. Spain argues that § 1650a's language mirrors that of 28 U.S.C. § 1738, under which federal courts evaluate giving full faith and credit to state court judgments. Resp't's Mot. at 13. Citing doctrines it contends apply in the context of state court judgments, Spain asserts that this Court should not enforce the award because the ICSID tribunal exceeded its jurisdiction and infringed the exclusive competence of the European Commission and EU courts. *Id.* at 13–17. Petitioner responds that Spain's arguments do not constitute a defense to enforcement of an ICSID award. Pet'r's Opp'n at 9–15. The Court concludes that it must enforce the Award because it satisfies all three of the factors the D.C. Circuit considered in *Valores*, because Congress has not authorized the Court to relieve Spain from its obligations under the Award even if the ICSID tribunal did exceed its powers, and

12

because Spain does not show that a federal court would deny full faith and credit to a state court judgment under similar circumstances.

The ICSID Convention provides that an award "shall not be subject to any appeal or to any other remedy" outside of the Convention.  ICSID Convention art. 53(1).  It thus anticipates that any award would be final, at least in the absence of an annulment.  "[Contracting] states' courts are thus not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award."  *Valores*, 87 F.4th at 515 (quoting *Mobil*, 863 F.3d at 102).  "The Convention treats Contracting States' courts as courts of enforcement, not review," and "[t]he efficacy of this framework depends on the finality of ICSID Arbitral Tribunal decisions."  *Id.* at 518.

Congress mirrored this sentiment when it enacted § 1650a, which states that "[t]he pecuniary obligations imposed by . . . an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a [state] court."  This provision affords a court little discretion.  *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016)).  As a result, "both the Convention and its implementing legislation strictly limit a federal court's authority to review an ICSID award."  *Valores*, 87 F.4th at 518; *see also TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) (describing a court's role in enforcing an ICSID award as "exceptionally limited"); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457, 2018 WL 6605633, at *6 (D.D.C.

13

Dec. 17, 2018) (describing "the perfunctory role that 22 U.S.C. § 1650a appears to envision for federal district courts"). The Second Circuit has additionally observed that the statute's "legislative history suggests that this provision was intended to immunize ICSID awards from substantive assault outside the ICSID tribunal." *Mobil*, 863 F.3d at 117.

In *Valores*, the D.C. Circuit considered whether an ICSID arbitration award against the Bolivarian Republic of Venezuela should receive full faith and credit under § 1650a. 87 F.4th at 513. During the underlying arbitration proceedings, the Venezuelan National Assembly recognized Juan Guaidó as Venezuela's Interim President, and he sought to intervene and replace the representatives of Nicolás Maduro's government. *Id.* at 516–17. ICSID denied the request. *Id.* at 517. When the investors prevailed and sought to enforce the award in a U.S. court, the Venezuelan government—headed by Interim President Guaidó—argued that the awards should not receive full faith and credit because his government's representatives were denied an opportunity to be heard. *Id.* at 520. The district court held that the award was entitled to full faith and credit, *see id.* at 517, and the D.C. Circuit affirmed, *see id.* at 524.

The D.C. Circuit explained that "the full faith and credit obligation is exacting" and that a state court's final judgment "qualifies for recognition throughout the land" if the court has "adjudicatory authority over the subject matter and persons governed by the judgment." *Id.* at 519. "Preventing relitigation of issues already decided is the keystone of the full faith and credit obligation," the court continued. *Id.* In a "straightforward application of Section 1650a," the court then looked to three facts to determine that the award was entitled to full faith and credit. *Id.* at 520. First, the court observed that "no party contest[ed] the jurisdiction of ICSID." *Id.* Second, the court noted that the parties did not debate "the authenticity of the awards rendered by the Arbitral Tribunal" or the decision of the "Annulment Committee." *Id.* Third, the court

14

concluded that "ICSID would treat the award[s] as binding." *Id.* As such, "the ICSID awards [were] enforceable against Venezuela. *Id.*; *see also Mobil*, 863 F.3d at 121 (stating that an award-debtor may make "non-merits challenges to the award" such as challenging its "authenticity" or "finality").[3]

All three of these requirements are met here. The parties do not debate the authenticity of the Award, the Arbitral Tribunal's decision, or the *ad hoc* Committee's Annulment Decision. In addition, ICSID would treat the award as binding. The ICSID Convention states that any "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in th[e] Convention." ICSID Convention. art. 53(1). Here, Spain sought annulment, which the *ad hoc* Committee denied, and there are no further remedies available. *See id.* art. 52. The Court additionally concludes that the Arbitral Tribunal had jurisdiction over the dispute. Spain is a party to the Convention, which states that its jurisdiction extends to "any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit" to ICSID. ICSID Convention art. 25(1). That consent can be found in Part III of the ECT, where Spain gave "unconditional consent to the submission of a dispute to international arbitration." ECT art. 26(3)(a); *see also NextEra*, 112 F.4th at 1100–03 (holding that this clause constituted an agreement to arbitrate with a private investor). JGC's dispute

---

[3] In *Valores*, the D.C. Circuit did not consider the test district courts previously employed to determine the enforceability of arbitration awards. Courts in this district had concluded that enforcement required a showing that (1) the court has subject matter jurisdiction; (2) the award is authentic; and (3) that the court's enforcement order tracks the award. *See Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 218 (D.D.C. 2023) (citing *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022); *see also TECO Guatemala Holdings*, 414 F. Supp. 3d at 101. This Court determined that it has subject matter jurisdiction and will naturally ensure that its judgment tracks the award.

about its investment in Spanish solar thermal plants plainly fell within the ambit of the treaties'

arbitration agreements.  Spain appeared to recognize this during the underlying arbitration, as it

challenged the Arbitral Tribunal's jurisdiction over a specific issue—Spain's tax on energy

production—not its jurisdiction over the matter as a whole.[4]  Decision ¶ 383(b).  Because the

three requirements the D.C. Circuit examined in *Valores* are met, the Court determines that it

must enforce the Award under § 1650a.

To the extent that the Arbitral Tribunal may have erred in carrying out its responsibilities

under the ECT and the ICSID Convention, Spain is without remedy in this Court.  The Federal

Arbitration Act ("FAA") empowers district courts to vacate arbitration awards "where the

arbitrators exceeded their powers" or "so imperfectly executed them that a mutual, final, and

definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a).  Yet

Congress foreclosed this form of judicial review when implementing the ICSID Convention,

stating that the FAA "shall not apply to enforcement of awards rendered pursuant to the

[C]onvention."  22 U.S.C. § 1650a(a).  The Court cannot now open a door Congress has closed

to relieve Spain from the Award.[5]

---

[4] Spain initially argued that the dispute was not properly before the Arbitral Tribunal based on its EU-law objection.  Decision ¶ 383(a).  Spain later withdrew that objection after the Court of Justice of the EU clarified that its holding did not apply to relations between an EU member state and a non-member state.  *Id.* ¶¶ 386–87.

[5] For similar reasons, Spain's reliance on cases interpreting the FAA to support its argument that the Tribunal "manifestly abused its powers" is unavailing.  Resp't's Mot. at 15 (discussing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019)).  The FAA is a poor analogue to the present case, as it provides for direct, "expedited judicial review to confirm, vacate, or modify arbitration awards."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (citing 9 U.S.C. § 9–11).  That judicial review is quite different from collateral attack on the final judgment of an ICSID tribunal that is subject to no further review.

Spain nonetheless argues that the Arbitral Tribunal lacked jurisdiction, and that this Court should therefore decline to enforce the Award. Resp't's Mot. at 13–17. This is so, Spain asserts, because the European Commission has concluded that any arbitral award would itself constitute state aid under EU law, and the tribunal "did not have competence" to grant "state aid in violation of EU law." *Id.* at 15; *see also* State Aid Decision, Ex. 8 to Resp't's Mot., ECF No. 13-9. In support of this argument, Spain points to two sources of authority interpreting the full faith and credit of judgments in this country. First, Spain asserts that a jurisdictional determination may be subject to collateral attack when "the first court's proceeding 'substantially infringe[d] the authority of another tribunal or government agency,'" and that the Arbitral Tribunal here infringed on the authority of the European Commission and EU courts. Resp't's Mot. at 2 (quoting *Blinder, Robinson & Co. v. Sec. Exch. Comm'n*, 837 F.2d 1099, 1104 (D.C. Cir. 1988)). Second, Spain asserts that subject matter jurisdiction may be collaterally attacked where the "subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority," and that the Arbitral Tribunal manifestly abused its powers under the ECT. *Id.* at 14–15 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 n.6 (2009)). Spain's jurisdictional arguments would not succeed even if *Valores* did not dictate the outcome of this case, and even if Congress had authorized the Court to consider whether the tribunal exceeded its jurisdiction.

In asserting that the Tribunal lacked jurisdiction because it did not have the power to grant pecuniary relief, Spain conflates the Tribunal's jurisdiction over the dispute with an error of law committed during the exercise of that jurisdiction. Federal courts have addressed this issue most commonly in the context of habeas corpus, where petitioners seek to collaterally attack trial courts' verdicts by asserting that the original court lacked jurisdiction. The Supreme

17

Court has stated that a trial court's "error of law" does "not go to the jurisdiction of the trial court." *Sunal v. Large*, 332 U.S. 174, 181 (1947). Errors are instead properly corrected on appeal. *See id.* at 181–82. The Supreme Court has thus differentiated "[m]ere errors in point of law" from a court's proper "exercise of its jurisdiction over a case properly subject to its cognizance." *Frank v. Mangum*, 237 U.S. 309, 326 (1915); *see also Fauntleroy v. Lum*, 210 U.S. 230, 235 (1908) (comparing rules "meant to limit" a court's "power" from those "establish[ing] a rule of substantive law"). The same holds true regarding Spain's collateral attack on the Award. Spain does not protest that the Arbitral Tribunal was improperly constituted, or that Spain had not submitted to its authority. If the Tribunal's decision to issue a pecuniary award were unlawful, it would therefore constitute an error of law that does not oust that jurisdiction over the dispute. *See Fauntleroy*, 210 U.S. at 238 (holding that full faith and credit is required even where the original court is "mistaken" on the merits).

Spain is correct that a state court's jurisdiction may sometimes be subject to collateral attack. *See Durfee v. Duke*, 375 U.S. 106, 110 (1963).[6] Yet the bar on collaterally attacking a state court's subject matter jurisdiction is particularly strong in cases where the issue was actually litigated, or could have been litigated, in the first action. The Supreme Court has concluded that when "the question of subject-matter jurisdiction ha[s] been fully litigated in the original forum, the issue [can]not be retried in a subsequent action between the parties." *Durfee*, 375 U.S. at 112 (collecting cases). The Court described this as a "doctrine of jurisdictional

---

[6] While *Durfee* holds that state court judgments may be subject to collateral attack based on lack of jurisdiction, the same cannot be said of federal court judgments. *See Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (holding that federal courts' determinations of their own jurisdiction "while open to direct review, may not be assailed collaterally"); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152–53 (2009); *Des Moines Navigation & R. Co. v. Iowa Homestead Co.*, 123 U.S. 552, 556–59 (1887).

finality." *Id.* at 113.  The Arbitral Tribunal explored its jurisdiction over the matter during the arbitral proceedings, *see* Decision ¶¶ 383–465, during which Spain decided to withdraw its objection to the body's jurisdiction of the matter as a whole, *see id.* ¶¶ 386–87.  As the Arbitral Tribunal is "the judge of its own competence," ICSID Convention art. 41(1), and must consider objections to its jurisdiction, *id.* art. 41(2), Spain had the opportunity to litigate this issue before ICSID but did not do so.  To the extent that the jurisdictional issue was not "fully litigated" because of this withdrawal, Spain nonetheless "had an opportunity to litigate the question of subject-matter jurisdiction [and] may not" now "reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n.9 (1982).

Spain does not convince the Court otherwise with its claim that the Arbitral Tribunal "substantially infringed the exclusive competence of the European Commission and jurisdiction of the EU courts over matters relating to state aid." Resp't's Mot. at 15.  According to Spain, the D.C. Circuit's opinion in *Blinder* confirms that this substantial infringement renders the judgment subject to collateral attack.  *See id.* at 14.  *Blinder* pulled this "substantial infringement" standard from *Kalb v. Feuerstein*, 308 U.S. 433 (1940), before reading it "narrowly" and concluding that the facts before it were "unexceptional." 837 F.2d at 1104.[7]  In *Kalb*, a state court erroneously concluded that it had jurisdiction over property subject to ongoing bankruptcy proceedings, but the Supreme Court concluded that Congress had intended to strip state courts of jurisdiction over that property.  *Kalb*, 308 U.S. at 440.  The Supreme Court stated

---

[7] *Blinder* recognized that one other exception exists for when the first court's proceedings "improperly trenched on sovereign immunity." 837 F.2d at 1104 (discussing *United States v. U.S. Fidelity Co.*, 309 U.S. 506 (1940)).  That exception does not apply here, where no party argues that the Arbitral Tribunal transgressed Spain's sovereignty.

that "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to [the] principle" that "a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack." *Id.* at 438–39. As the Court later recognized, the exception described in *Kalb* concerns the "[d]octrine[] of federal pre-emption," *Durfee*, 375 U.S. at 114, not a freewheeling exception to full faith and credit. The case before this Court does not implicate preemption. Nor does it implicate any similar principle under which EU law might preempt the ICSID Convention or its application to a dispute between an EU member and a non-member private investor before ICSID. While Spain plausibly argues that an EU court may have decided the state aid issue differently, there is no indication that EU law would preclude the Tribunal's jurisdiction over the subject matter in its entirety. Similarly to the situation in *Blinder*, the facts here are "unexceptional" and do not undermine the Arbitral Tribunal's authority to render a decision. 837 F.2d at 1104.

In addition, Spain points to no authority other than the Restatement itself permitting collateral attack on a judgment because "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." Restatement (Second) of Judgments § 12(2) (1982); *see also* Resp't's Mot. at 14. "Case law supporting the exceptions framed in § 12 is exceedingly sparse." William L. Reynolds, *The Iron Law of Full Faith and Credit*, 53 Md. L. Rev. 412, 430 n.113 (1994). The Supreme Court itself has yet to decide whether to "adopt all of the[] exceptions" in that section of the Restatement. *Travelers*, 557 U.S. at 153 n.6. Federal courts have generally found these "substantial infringement" collateral attacks to fail outside the context of preemption. *See, e.g.*, *Blinder*, 837 F.2d at 101 (rejecting collateral attack on Tenth Circuit decision); *Pourbabai v. Lahood*, No. 04-cv-1554, 2009 WL

20

801802, at *3 (D.D.C. Mar. 25, 2009) (rejecting collateral attack on Federal Circuit decision); *United States v. Chambers*, 922 F.2d 228, 239 (5th Cir. 1991) (rejecting collateral attack on Texas criminal conviction); *Hodge v. Hodge*, 621 F.2d 590, 593 (3d Cir. 1980) (rejecting collateral attack on state court divorce decree).

Spain's other line of attack based on Section 12 of the Restatement similarly falls flat. Spain argues that the "subject matter of the action was so plainly beyond the [Arbitral Tribunal's] jurisdiction that its entertaining the action was a manifest abuse of authority." Resp't's Mot. at 14. But the Court has concluded that the matter in dispute—JGC's investments in energy infrastructure—fell well within the Arbitral Tribunal's jurisdiction. The Tribunal's "entertaining the action" thus could not abuse its authority. In addition, Spain does not point to authority, other than the Restatement, adopting this exception to the finality of state court judgments. *See Travelers*, 557 U.S. at 153 n.6 (noting that the Supreme Court has not adopted the exception).

In sum, even if Spain could show that the Arbitral Tribunal committed an error of law or infringed on the power of EU authorities or courts, it cannot show that the three requirements the D.C. Circuit articulated in *Valores* are not met; it cannot show that Congress intended the Court to consider whether the arbitrators exceeded their powers as might occur under the FAA; and it cannot show that a similar state court judgment would not be entitled to full faith and credit in a federal court. In addition, the Arbitral Tribunal had jurisdiction over the action. The Court therefore enforces the Award pursuant to its obligations under 22 U.S.C. § 1650a.

### D. Spain's Remaining Defenses

Seeking to convince the Court to dismiss the petition or decline to enforce the Award, Spain appeals to several common-law doctrines federal courts often employ in the context of

transnational litigation.  This includes the *forum non conveniens* doctrine, act of state doctrine, foreign sovereign compulsion doctrine, and broader international comity doctrine.  *See* Resp't's Mot. at 18–22.  The Court determines that none of these theories overcome the Court's obligation to enforce the Award.

### 1.  Forum Non Conveniens

Spain argues that under the doctrine of *forum non conveniens*, Spanish courts represent the only suitable forum to resolve whether the award is ultimately enforceable under EU law.  Resp't's Mot. at 21.  Spain nonetheless acknowledges that this argument is foreclosed by binding D.C. Circuit precedent interpreting the New York Convention.  *See id.* at 20.

A federal court has discretion to dismiss a case on the grounds of *forum non conveniens* (1) "when an alternative forum has jurisdiction to hear the case" and (2) "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)).  These considerations include "most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996).  The D.C. Circuit held that dismissal under the *forum non conveniens* doctrine was inappropriate in relation to enforcement of an award under the New York Convention because only a United States court "may attach the commercial property of a foreign nation located in the United States."  *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) (citing 28 U.S.C. §§ 1609, 1610(a)(6)); *see also Stileks*, 985 F.3d at 876 n.1 ("*[F]orum non*

22

*conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States.").  The D.C. Circuit recently confirmed that *forum non conveniens* does not apply to confirmation of ICSID awards, either.  *See NextEra*, 112 F.4th at 1105.

Dismissal based on *forum non conveniens* is additionally inappropriate here because there is no issue of foreign law for the Court to consider, and thus there are no "practical difficulties" in this Court's consideration of the case.  *Quackenbush*, 517 U.S. at 723.  As dictated by *Valores*, this Court's role is limited to examining ICSID's jurisdiction over the dispute, the authenticity of the award, and whether ICSID would treat the award as binding.  87 F.4th at 520.  There is no reason a foreign court would be better suited to this task.  This is particularly true given that the Court carries out this duty pursuant to United States federal law codified at 22 U.S.C. § 1650a, not international or foreign law, as the ICSID Convention is not self-enforcing.  *See Mobil*, 863 F.3d at 119.  As Spain recognizes, dismissal of the petition is not warranted under the doctrine of *forum non conveniens*.

## 2. Act of State Doctrine

Spain additionally contends that the act of state doctrine weighs against enforcement of the Award.  Resp't's Mot. at 18.  Petitioner responds that it has not challenged Spain's official acts or asked the Court to pass on the validity of Spain's actions.  Pet.'s Opp'n at 17.  Spain asserts in reply that enforcement of the Award would require the Court to pass on the validity of the Award under EU law.  Resp't's Reply at 18–19.  The Court agrees with Petitioner that the act of state doctrine does not tie its hands here.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own

territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). It applies when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012) (quoting *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405 (1990)); *see also* Restatement (Fourth) of Foreign Relations Law § 441 cmt. a (2018) ("[T]he act of state doctrine when applicable bars a court from questioning the validity of the foreign act on the ground that it did not comply with that sovereign's own legal requirements, international law, or U.S. law or policy.").

The Supreme Court has clarified that the act of state doctrine is relevant only when "a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick*, 493 U.S. at 406. In *W.S. Kirkpatrick*, representatives of a U.S. company paid bribes to Republic of Nigeria officials to secure government contracts. *Id.* at 401–02. An unsuccessful contract bidder brought suit, and the company raised the act of state doctrine as a bar. *Id.* at 402. The Supreme Court ruled that "the factual predicate for application of the act of state doctrine does not exist" because "[n]othing in the present suit requires the Court to declare invalid, and thus ineffective as 'a rule of decision for the courts of this country,' the official act of a foreign sovereign." *Id.* at 405 (*quoting Ricaud v. Am. Metal Co.*, 246 U.S. 304, 310 (1918)). The case did not require a court to, for instance, hold that a defendant's detention was tortious by denying the legal effect of the acts of a foreign military commander. *Id.* (citing *Underhill v. Hernandez*, 168 U.S. 250 (1897)). Nor did it call upon a court to deny title to a party who purchased the land from Mexico, and in doing so declare that Mexico's seizure of the property within its own territory was legally ineffective. *Id.* (citing

24

*Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918); *Ricaud*, 246 U.S. at 310). Nor did it require a court to hold that Cuba's expropriation of goods located in Havana was null and void. *Id.* at 405–06 (citing *Sabbatino*, 376 U.S. at 413). The Court observed that the lawsuit based on the company's alleged acts of bribery did not require a U.S. court to determine the validity of the contract with Nigeria, and as such the act of state doctrine did not apply. *Id.* at 406.

The same principle holds true here, as the Court need not examine the validity or outcome of any European Commission investigation on the nature of state aid to enforce the award. *See* Pet'r's Opp'n at 17. The "outcome of the case" does not "turn[] upon . . . the effect of" the European Commission's investigation. *W.S. Kirkpatrick*, 493 U.S. at 406. As the Court has repeated, its role is cabined to examining ICSID's jurisdiction over the dispute, the authenticity of the award, and whether ICSID would treat the award as binding. *Valores*, 87 F.4th at 520. Finding each of these requirements met—and implementing the ICSID Convention's requirements that an arbitration award be treated as final—does not require this Court to declare invalid or disagree with the outcome of the European Commission's investigation. Here, "Petitioner[] ha[s] not challenged the acts or decisions of a foreign sovereign," but rather "ha[s] merely sought to enforce a decision rendered by a forum for international arbitration to which [Spain] has voluntarily submitted itself." *Micula v. Gov't of Romania*, No. 20-7116, 2022 WL 2281645, at *2 (D.C. Cir. June 24, 2022); *see also Micula v. Gov't of Romania*, No. 15 MISC. 107, 2015 WL 4643180, at *8 (S.D.N.Y. Aug. 5, 2015) ("The narrow issue here is the recognition of the Petitioners' ICSID Award. In recognizing that award,

no act of any sovereign has been deemed either relevant or invalid.").  The act of state doctrine

thus does not apply here.[8]

### 3.  Comity and the Foreign Sovereign Compulsion Doctrine

Spain additionally asserts that the Award should not be enforced under the foreign

sovereign compulsion doctrine as a matter of international comity.  *See* Resp't's Mot. at 18.

Petitioner asserts that the foreign sovereign compulsion doctrine does not apply because it is the

ICSID Convention, and not a U.S. court, that requires Spain to comply with the Award; the

doctrine applies to private parties and not governments; and the doctrine applies only where there

is a realistic possibility that the foreign entity will face severe sanctions.  Pet'r's Opp'n at 15–17.

Spain responds that the ICSID implementing statute does not preclude comity defenses and that

entering judgment on the Award "would, in essence, be compelling Spain to violate its

obligations under EU law."  Resp't's Mot. at 15.  The Court agrees with Petitioner that it need

not decline to enforce the Award as a matter of international comity.

"International comity 'is the recognition which one nation allows within its territory to

the legislative, executive or judicial acts of another nation.'"  *Usoyan v. Republic of Turkey*, 6

F.4th 31, 48 (D.C. Cir. 2021) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).  "Comity can

---

[8] It is additionally unclear whether the European Commission's legal determination that
an arbitration award constitutes unlawful state aid under EU law is the sort of "official act" the
doctrine is intended to respect.  A foreign state "acts," for instance, when it orders someone
detained; sells, nationalizes, or appropriates property; or requires a bank to pay tax on a
transaction.  *United States v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 242 (D.D.C. 2017).  "It
does not 'act' in the relevant sense, however, when it merely *declares* its position on an issue
that reaches beyond its borders and over which it lacks the power to dictate any actual
consequences."  *Id.*  Nor does it "act" when its courts rule on legal issues.  *See* Restatement
(Fourth) of Foreign Relations Law § 441 cmt. c. (2018) ("Not all acts attributable to a foreign
sovereign constitute official acts to which the act of state doctrine applies.  The act of state
doctrine does not apply to the judgments of foreign courts, which are governed by the rules"
regarding enforcement of foreign judgments).  Because the parties have not briefed this issue,
however, the Court does not reach it.

thus be described as a 'golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances.'" *Id.* (quoting *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 8 (D.D.C. 2013)). A comity analysis requires a threshold inquiry into "whether a 'true conflict' exists between the implicated legal systems." *In re Sealed Case*, 932 F.3d 915, 931 (D.C. Cir. 2019). Assuming a true conflict exists, courts then examine a series of balancing factors relevant to the comity analysis. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987). The foreign sovereign compulsion doctrine "reflects the practice of states in the interests of comity." Restatement (Fourth) of Foreign Relations Law § 442 cmt. 10 (2018). In raising the foreign sovereign compulsion doctrine, Spain appeals to the notion of "prescriptive comity" under which the Court should give "deference to foreign lawmakers" who have—according to Spain—prohibited state aid. *Usoyan*, 6 F.4th at 48.

The foreign sovereign compulsion doctrine most often arises in the context of antitrust lawsuits, where a party may be shielded from liability for acts required by a foreign government's laws. *See Cube*, 2023 WL 2914472, at *12; *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979); *In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136, 145 (2d Cir. 2021). This is, of course, not an antitrust action. But courts have applied the same comity-based principles in other situations more closely analogous to those here, where a Court compels compliance with U.S. law in a manner that may put a litigant at odds with its obligations under foreign law. This issue can occur, for instance, when a U.S. court considers whether to enforce a subpoena when the law of a foreign state prohibits producing the relevant materials. *See generally In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50*

*U.S.C. § 1705*, 381 F. Supp. 3d 37, 74 (D.D.C.), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y.), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011).  The D.C. Circuit has observed in this context that "it causes [the court] considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question."  *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987); *see also id.* at 498–99 ("We have little doubt, for example, that our government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders.").

The Court concludes that these comity principles do not favor barring enforcement of a judgment, however, where Petitioner seeks recognition of an ICSID award.  The Supreme Court has long held that "where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction," defendants cannot "contest the validity or the effect of the judgment" in a court of the United States.  *Hilton*, 159 U.S. at 202–03.  In fact, it is "the central precept of comity" that "the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations."  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).  The Award here resulted from several years of arbitration proceedings in an international forum with its own international legal personality, *see* ICSID Convention art. 18, and international comity thus weighs toward enforcement of the Award.

ICSID's structure—both as a multilateral agreement and as implemented in United States law—further demonstrates that comity concerns cannot prevent enforcement of an arbitral award.  The Convention provides that final awards are binding and not subject to appeal or any

other remedy. ICSID Convention art. 53(1). Spain recognized this obligation when it signed the treaty, and "[t]he efficacy of this framework depends on the finality of ICSID Arbitral Tribunal decisions." *Valores*, 87 F.4th at 518. When Congress drafted the Convention's enabling act, codified at 22 U.S.C. § 1650a, it intended for ICSID awards to be strictly enforced, deliberately excluding the statute from further remedies under the FAA. *See* 22 U.S.C. § 1650a; *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004) (counseling courts to "assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws"). Spain is thus incorrect that "nothing about the ICSID implementing statute prohibits applying the foreign sovereign compulsion doctrine," Resp't's Reply at 15, as comity concerns are essentially "baked in" to the ICSID Convention and its implementing statute.

Furthermore, assuming that the Award does "compel[] Spain to violate its obligations under EU law," Resp't's Mot. at 15, and that this indeed creates a "true conflict" between U.S. and foreign law, *In re Sealed Case*, 932 F.3d at 931, an order from this Court declining to enforce the Award may then place both Spain *and* the United States in conflict with their obligations under the ICSID Convention to "recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary obligations imposed by that award." ICSID Convention art. 54(1). Thus, to the extent that there is a "true conflict" between EU law and 22 U.S.C. § 1650a, declining to enforce the Award would create a separate conflict with Article 54 of the Convention.

Finally, when considering whether comity considerations should stay the judiciary's hand, many U.S. courts have considered the certainty to which the party will face consequences abroad. *See, e.g.*, *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 559 (S.D.N.Y. 2012)

29

38

(observing that the Bank of China had not been "meaningfully sanctioned" for complying with two previous production orders); *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-cv-8087, 2013 WL 2661037, at *14–15 (S.D.N.Y. June 12, 2013); *Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 532 (D. Vt.); *see also* Pet'r's Opp'n at 16–17. "Generally, courts require specific evidence that an institution would be punished for complying with a foreign court order." *CE Int'l Res. Holdings*, 2013 WL 2661037, at *15. Spain argues that the CJEU has subjected the Award to a standstill decision, and that another EU member state was recently ordered to recover funds unlawfully granted as state aid and to pay financial penalties until it did. Resp't's Reply at 17–18. Yet just because the European Commission "would be able" to bring Spain before the CJEU does not mean that it would do so in this case, where Spain is compelled to pay an award under the ICSID Convention. *See Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 103 (S.D.N.Y. 2015) (enforcing subpoena where the subpoenaed bank "could point to no case where a Chinese bank was subjected to liability" for complying with a subpoena). Spain thus does not show that the Court should decline to enforce the Award as a matter of international comity.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Spain's motion to dismiss is **DENIED**; and it is

**FURTHER ORDERED** that summary judgment is granted to Petitioner, and the petition to enforce the Award is **GRANTED**; and it is

**FURTHER ORDERED** that the parties shall meet, confer, and jointly file a proposed final judgment on or before October 28, 2024. That proposed judgment shall include all elements included in the ICSID Award, including a current calculation of pre- and post-judgment

interest.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued.


Dated:  September 26, 2024                                    RUDOLPH CONTRERAS
                                                             United States District Judge

31